# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THERESA ARMSTEAD,<br>　　　　Plaintiff<br><br>　　v.<br><br>VALLEY VIEW SCHOOL DISTRICT,<br>　　　　Defendant | No. 23 CV 3312<br><br>Judge Jeremy C. Daniel |

## ORDER

*Pro se* plaintiff, Theresa Armstead, brings this suit against her former employer, Valley View School District ("Valley View"), alleging racial discrimination and retaliation in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act ("Title VII"), and a violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). (R. 10.) Before the Court is Valley View's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 22.)[1] For the following reasons, the motion is denied. Valley View shall answer the complaint on or before April 29, 2024.

## STATEMENT

Armstead joined Valley View as a Food Service Associate in March 2020 and worked in that position until her resignation in April 2023. (R. 10 at 13.)[2] Armstead's claims arise from Valley View's refusal to allow Armstead to work wearing the surgical shoe her doctor required her to wear after she broke her toe in August 2022. (R. 31 at 1.) Armstead also requested to be allowed to watch mandatory annual training videos to avoid using her sick time. (*Id.*) Armstead's manager, Nancy Droszck, told Armstead that she could not return to work with restrictions wearing the surgical shoe. (*Id.*) Droszck further said that if Armstead needed to take more than five days leave, she

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

[2] For purposes of this motion, the Court accepts as true Armstead's factual allegations, as well as her elaborations upon those allegations in her response brief (to the extent they are consistent with the complaint), *see Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017); *see also Thompson v. Ill. Dep't of Prof. Reg.*, 300 F.3d 750, 753 (7th Cir. 2002) (providing that on a Rule 12(b)(6) motion, the pleadings "consist generally of the complaint, any exhibits attached thereto, and supporting briefs") (citing Fed. R. Civ. P. 10(c)), and draws all reasonable inferences in her favor. *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021).

was required to request FMLA. (*Id.*) Armstead, a Black woman, alleges a similar accommodation was afforded to a Hispanic colleague, Irma Terriquez, on two different occasions. (R. 10 at 13; R. 31 at 1.) Around February 2023, Armstead complained of this differential treatment to Human Resources ("HR") and Droszck. (R. 31 at 1.) Armstead alleges that, in response, Droszck told Armstead several times that she could find another job. (*Id.*)

During and after the investigation of her complaint, Armstead felt unsafe, nervous, depressed, mentally distressed, and afraid to return to the work environment. (*Id.*) Specifically, on February 17, she alleges that she was harassed, disrespected, and spoken to in a threatening manner by Droszck. (*Id.*) On another occasion, she alleges that the Dean of Students harassed, and treated her harshly in the presence of coworkers and students. (*Id.*) This incident made her feel embarrassed, afraid, and unsafe around this person. (*Id.*) Armstead asserts that all of this caused her to resign her position on April 13, 2023. (*Id.*)

Armstead timely exhausted her administrative remedies by filing charges with the EEOC on April 25, 2023, and obtaining a notice of right to sue on April 26, 2023. (R. 1 at 7–14.) Armstead thereafter filed this lawsuit asserting claims of racial discrimination and retaliation in violation of § 1981 and Title VII, and disability discrimination in violation of the ADA. (R. 10.) Valley view filed a Rule 12(b)(6) motion to dismiss for failure to state a claim. (R. 22.)

To survive dismissal Armstead's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 621–22 (7th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Triad Assocs. Inc. v. Chi. Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). Where, as here, the plaintiff is *pro se*, the Court accords a liberal reading of the complaint. *See Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)).

First, Valley View argues that Armstead's racial discrimination claims fail because she has not alleged that she was performing her job at satisfaction. (R. 23 at 4.) But a plaintiff need not specifically allege that they were satisfactorily performing their job to state a claim for racial discrimination. *Thompson v. John J. Madden Mental Health Ctr.*, No. 99 C 2558, 2000 WL 1780348, at *3 (N.D. Ill. Dec. 4, 2000), *aff'd*, 35 F. App'x 413 (7th Cir. 2002) ("[T]he issue at the *prima facie* stage is not whether the suspension was warranted but whether Thompson was unfairly singled out because of his race. Even assuming that Thompson's conduct fell below satisfactory in the eyes of the Health Center, he can make his *prima facie* case if the Health Center punished his coworkers less severely, or not at all"). Rather, to state a claim for discrimination under Title VII, Armstead need only allege that "[Valley View] instituted a (specified) adverse employment action against [her] on the basis of her [race]." *Tamayo v.*

2

*Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). The complaint does so; in short, Armstead alleges that she was denied an accommodation that was offered to a Hispanic colleague. (R. 10 at 13; R. 31 at 1.) These allegations are sufficient to support an inference that the adverse employment actions alleged here, *i.e.*, the denial of the accommodation, and the alleged harassment that followed, were race-based. *See, e.g.*, *Thompson*, 2000 WL 1780348, at *2 (requiring the plaintiff "present only some evidence from which a jury could infer that the Health Center suspended him because of his race").

Valley View further argues that Armstead has not alleged an adverse employment action. (R. 32 at 3–4.) "In a discrimination case, a materially adverse employment action is one which visits upon a plaintiff 'a significant change in employment status.'" *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (citation omitted). "Such changes can involve," as relevant here, "changes to work conditions that include humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alteration in the workplace." *Id.* When viewed in the light most favorable to Armstead, Armstead's allegations that she was denied an accommodation afforded to Terriquez and was told that she would be required to request FMLA instead of being permitted to work with a surgical boot are sufficient at this stage to support an adverse employment action. *See Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) ("[A] plaintiff need only allege enough facts to allow for a *plausible* inference that the adverse action suffered was connected to her protected characteristics.") (emphasis in original); *see also Ceska v. City of Chi.*, No. 13 C 6403, 2015 WL 468767, at *5 (N.D. Ill. Feb. 3, 2015) ("The Court concludes that consigning an employee to unpaid medical leave by denying the employee a reasonable accommodation—in practical effect, a discharge (or, at the very least, a decrease in wages)—constitutes an adverse employment action."); *see, e.g., Stevens v. Ill. Dep't of Corr.*, No. 12 C 1419, 2013 WL 3353861, at *5 (C.D. Ill. July 3, 2013) (finding that the plaintiff had stated a claim for adverse employment action by alleging that he requested an accommodation, explained why the accommodation was reasonable, but his employer denied the accommodation). The motion to dismiss Armstead's racial discrimination claims is accordingly, denied.

Next, Valley View argues that Armstead's retaliation claims should be dismissed. "To make out a *prima facie* claim of retaliation under Title VII or § 1981, [Armstead] must allege that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action taken by the employer; and (3) a causal connection exists between the two." *Jordan v. Whelan Sec. of Ill., Inc.*, 30 F. Supp. 3d 746, 753 (N.D. Ill. 2014). Valley View asserts that the complaint fails on each element. (R. 23 at 4–5; R. 32 at 3–5.)

Valley View first cites *Northington v. H & M International* to argue that Armstead has not alleged statutorily protected activity. 712 F.3d 1062, 1065 (7th Cir. 2013); (R. 23 at 4–5.) In *Northington*, the Seventh Circuit affirmed a district court's grant of

3

summary judgment because the evidence showed that the harassment the plaintiff reported was motivated by personal conflict, not race or gender. 712 F.3d at 1065. Because the complained of harassment was itself not a violation of Title VII, the plaintiff's report to HR did not constitute statutorily protected activity. *Id.* This case is readily distinguishable; Armstead's allegation that she complained of the discriminatory treatment she alleges in this lawsuit to HR and her supervisor is sufficient to allege protected activity under Title VII. *See, e.g., Castro v. DeVry Univ., Inc.,* 786 F.3d 559, 564 (7th Cir. 2015) (finding protected activity when employees complained to HR that their supervisor "often used racially and ethnically derogatory language in the workplace").

The complaint also adequately alleges an adverse employment action because it pleads sufficient facts on which to infer that Armstead was constructively discharged. (R. 32 at 3–4.) "Constructive discharge, which occurs when the employer has made the job unbearable for the employee, can constitute a materially adverse employment action." *Gilhooly v. UBS Sec., LLC*, 772 F. Supp. 2d 914, 917 (N.D. Ill. 2011); *see also Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 536 (7th Cir. 1993) ("An employer constructively discharges an employee only if it makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation."). "[W]orking conditions for constructive discharge must be even more intolerable than the high standard for hostile work environment because in the ordinary case, an employee is expected to remain employed while seeking redress." *Gilhooly*, 772 F. Supp. 2d at 917. Conclusory allegations like an employer's constant criticism and harassment toward the plaintiff left her with little choice but to resign are insufficient to state a claim for constructive discharge. *See id.* Rather, to support an inference that working conditions were even more egregious than that required for a hostile work environment, the plaintiff must come forward with "specific examples of poor treatment." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014); *see, e.g., Herrera v. Di Meo Bros., Inc.*, 529 F. Supp. 3d 819, 829 (N.D. Ill. 2021) (denying motion to dismiss where the plaintiff presented examples of poor treatment).

Here, Armstead alleges that Droszck, her manager, responded to her accommodation request by saying several times that Armstead could find another job. (R. 31 at 1.) She further alleges that, within a few weeks of her complaints to HR and Droszck, she was "harassed, disrespected, and spoken to in a threatening manner" by Droszck. (*Id.*) She also alleges that the Dean of Students "harassed [and] treated [her] harshly in the presence of coworkers and students." (*Id.*) She adds that this incident made her feel "embarrassed, afraid, and unsafe around the Dean of Students." (*Id.*) In light of Armstead's *pro se* status, the Court liberally construes these examples of mistreatment and concludes that they are sufficient at this stage. Though the conditions Armstead describes in her complaint may not ultimately qualify as intolerable, affording Armstead the benefit of all reasonable inferences to which she is entitled at this stage, the allegations are sufficient to withstand the defendant's

4

challenge at this stage. *See. e.g.*, *Brown v. Ferrara Candy Co.*, No. 22 C 04875, 2023 WL 6519973, at *8 (N.D. Ill. Oct. 5, 2023) (denying motion to dismiss *pro se* plaintiff's hostile work environment claim)

Valley View's third argument, that the complaint does not support an inference of causation, also fails. (R. 32 at 4–5.) Armstead's allegations link her examples of mistreatment with her complaints to HR and Droszck; she alleges that "[d]uring and after the investigation" of her HR complaint she felt "unsafe, nervous, depressed, mentally distressed, and afraid to return to the work environment." (R. 31 at 2.) Valley View ignores these allegations and asserts that Armstead has only alleged suspicious timing between her harassment reports in February 2023 and her resignation in April, which alone cannot support her claim. (R. 32 at 5.) While Valley View is correct that "mere temporal proximity between [the statutorily protected activity] and the action alleged to have been taken in retaliation for that [activity] will rarely be sufficient in and of itself to create a triable issue," *Harper v. C.R. England, Inc.*, 687 F.3d 297, 308 (7th Cir. 2012), to survive a Rule 12(b)(6) challenge, all Armstead needs to plausibly allege is that the harassment occurred because of her complaints. *See, e.g.*, *Herrera,* 529 F. Supp. 3d at 832 ("Plaintiff says that specific threats to his job and harassment from [supervisors] occurred because of his complaints. That is enough of a causal connection to pass muster at this stage."). Her allegations that her mistreatment occurred simultaneously with her complaints of discrimination support a reasonable inference of causation and thus the motion to dismiss her retaliation claims is denied.

Lastly, Valley View argues that Armstead's disability discrimination claim should be dismissed because she cannot demonstrate she had a disability within the meaning of the ADA. (R. 32 at 3.) To state a claim for employment discrimination in violation of the ADA, the plaintiff "must show (1) she is disabled; (2) she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (3) she suffered an adverse employment action; and (4) the adverse action was caused by her disability." *Brooks v. Avancez*, 39 F.4th 424, 433 (7th Cir. 2022). However, at the pleading stage, a plaintiff "does not need to allege facts to support a *prima facie* case of disability discrimination." *Mata v. Deslauriers, Inc.*, No. 21 C 3976, 2023 WL 2665441, at *2 (N.D. Ill. Mar. 28, 2023). "Rather, the pleading requirement for employment discrimination claims 'is minimal.'" *Id.* (citation omitted). "Typically, '[a] plaintiff need only identify the type of discrimination, when it occurred, and by whom.'" *Id.* (citation omitted). "A claim for 'discrimination on the basis of an actual disability' must also 'allege a specific disability' to provide fair notice to the employer." *Id.* (citation omitted).

The complaint here satisfies these standards. Although Armstead failed to specify her disability in her EEOC charge (which is attached to and is incorporated to her complaint), *Thompson*, 300 F.3d at 753, she supplied further detail in her response to the motion to dismiss, which the Court may consider to the extent that it elaborates

upon and is consistent with the allegations in the complaint. *Heng*, 849 F.3d at 354; *see, e.g.*, *Bowman v. Jones Coleman*, No. 1:21-CV-03015, 2021 WL 6113205, at *1 (N.D. Ill. Dec. 25, 2021) (considering, "the allegations in the EEOC charge that was attached to [a *pro se* litigant's] original Complaint, and the consistent allegations presented in his response brief"). Her response adds that she was physically impaired when she broke her toe, for which her doctor prescribed a surgical shoe to recover. (R. 31 at 1.) When Armstead requested to return to work wearing the surgical shoe and watch annual training videos to avoid using her sick time, her supervisor denied the requested accommodation and instead required her to request FMLA. (*Id.*) Read together, these allegations plausibly allege disability discrimination; they connect Armstead's injury, her medical restrictions impacting her ability to work, and Valley Views' denial of her requested accommodation. *See Winkfield v. Chi. Transit Auth.*, 435 F. Supp. 3d 904, 909 (N.D. Ill. 2020) ("Failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability' constitutes discrimination under the ADA, unless the employer can demonstrate that the accommodation would impose an 'undue hardship.'") (citation omitted); *see, e.g.*, *Mata*, 2023 WL 2665441, at *2 (denying motion to dismiss disability discrimination claim where the plaintiff alleged that she sustained a hand injury, her doctor imposed conditions substantially limiting her ability to lift and push at work, and her demand for accommodations caused her termination). Therefore, the motion to dismiss Armstead's disability claim is denied.

For the foregoing reasons, the motion to dismiss is denied. Valley View shall answer the complaint on or before April 29, 2024. It is so ordered.

Date: 4/9/2024

JEREMY C. DANIEL
United States District Judge